IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NAKIYA PITTS,

              Plaintiff,

v.                                            Civil Action No. 3:23cv141

METROPOLITAN LIFE INSURANCE
COMPANY &
SUPREME TRUTH REVEAL ALLAH,
              Defendants.

## OPINION

After her mother died, Nakiya Pitts ("Pitts") became entitled to a share of her mother's insurance policy, which named Pitts and her estranged father, Supreme Truth Reveal Allah ("Allah"), as beneficiaries. When Pitts met with Allah about this policy, he signed a document agreeing to disclaim his share. Metropolitan Life Insurance Company ("MetLife"), contractually bound to administer these benefits, refuses to pay Allah's share to Pitts.

Pitts sued MetLife and Allah, alleging breach of contract and seeking the remaining proceeds of the insurance policy. MetLife has filed a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (ECF No. 30.) In essence, MetLife asks the Court to hold that Allah is entitled to a share of the proceeds of the policy. Because Pitts has plausibly pleaded a viable breach of contract claim, the Court will deny the motion.

## I. BACKGROUND[1]

The Federal Employees' Group Life Insurance ("FEGLI") program—created through the Federal Life Insurance Act of 1954 ("FEGLIA")—provides life insurance coverage to certain

---

[1] In considering a Rule 12(c) motion, the Court considers the facts alleged in the complaint and, to the extent they do not conflict with the complaint's allegations, the facts alleged in the

federal government employees. (ECF No. 20 ¶¶ 1, 3.) Karen Caldwell-Pitts ("Caldwell-Pitts") received such a policy because she worked for the Department of Defense. (*See id.* ¶¶ 12–13.) During her lifetime, she designated three policy beneficiaries for the total value of her insurance benefits: (1) her daughter, Pitts (50%); (2) her husband and Pitts's biological father, Allah (25%); and her mother, Shirley Ann Caldwell (25%). (*Id.* ¶ 17; *see also* ECF No. 20-1.) Caldwell-Pitts's mother died before Caldwell-Pitts. (ECF No. 20 ¶ 19.) As a result, her interest split evenly between the two remaining beneficiaries. (*See id.*; ECF No. 20-6, at 4.) Thus, when Caldwell-Pitts died on November 27, 2022, two beneficiaries of the policy—worth $804,000—remained: Pitts (62.5%) and Allah (37.5%). (*See* ECF No. 20 ¶¶ 14, 16–17.) An exclusive contract (the "FEGLI Contract") between MetLife and the Office of Personnel Management ("OPM") required MetLife to administer these benefits consistent with the requirements and conditions of FEGLIA, OPM's regulations, and the FEGLI Contract. (ECF No. 20 ¶¶ 3–4.)[2]

Having divorced Caldwell-Pitts twenty-four years earlier and left the family, Allah had an estranged relationship with Pitts. (*See id.* ¶¶ 20–21.) After Caldwell-Pitts died, Pitts located Allah and told him that she would handle the life insurance. (*Id.* ¶ 22.) Pitts, accompanied by Caldwell-Pitts's brother and a notary public, met Allah at his home on January 7, 2023. (*Id.* ¶ 24.) During this meeting, Allah agreed to disclaim his rights to the benefits and signed a document titled, "Agreement To Relinquish all Claims to MetLife/FEGLI Insurance Benefits of Karen E. Pitts, and

---

answer. *See Pro-Concepts, LLC v. Resh*, No. 2:12cv573, 2014 WL 549294, at *5 (E.D. Va. Feb. 11, 2014). The Court also considers any "'written instrument' attached as an exhibit to a pleading" and documents "attached to the motion" to the extent "they are integral to the complaint and authentic." *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (first quoting Fed. R. Civ. P. 10(c); and then citing *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

[2] OPM implements the FEGLI program pursuant to 5 U.S.C. § 8709. (*Id.* ¶ 3.)

Assign All Benefits to the sole surviving daughter, to wit: Nakiya S. Pitts." (*Id.* ¶¶ 25–26; ECF No. 20-2.)

Two days later, Pitts sent the signed and notarized disclaimer letter to MetLife's Office of Federal Employees' Group Life Insurance ("OFEGLI") by email and postal service. (ECF No. 20 ¶ 37.) Thereafter, MetLife confirmed with Pitts that it had received the disclaimer letter, found that the disclaimer letter was a "valid disclaimer," and determined that Allah had "validly disclaimed his beneficiary rights under the Policy." (*Id.* ¶ 38.) On January 11, 2023, MetLife sent a letter to Allah confirming that it had received "[his] letter . . . disclaiming any entitlement to [his] . . . benefits." (*Id.* ¶¶ 39–40.) In that same letter, MetLife asked Allah to submit an "enclosed disclaimer form," but he never responded. (*Id.* ¶¶ 43–44.)

Despite the signed and notarized disclaimer Pitts sent to MetLife, MetLife refuses to pay Allah's interest in the benefits to Pitts. (*Id.* ¶ 67.) Pitts seeks a court order directing MetLife to pay the benefits disclaimed by Allah—a total of $301,500, plus interest under FEGLIA. (*Id.* at 9.)

The parties first disagree about what procedure governs the disclaimer of benefits. In her complaint, Pitts points to the OPM website, which includes a "straightforward" disclaimer procedure that says a beneficiary can disclaim their interest by "advis[ing] OFEGLI, in writing, that he/she does not want the money he/she is entitled to receive." (*See id.* ¶¶ 51–56; ECF No. 20-5.) According to the OPM website, upon satisfying this procedure, "OFEGLI would pay the disclaimed share equally to the remaining beneficiaries." (ECF No. 20 ¶ 57; ECF No. 20-5.)

Although MetLife does not dispute what the OPM website says, MetLife asserts that it has a different "established" disclaimer procedure than that listed on the OPM website, which requires the disclaiming beneficiary to submit a disclaimer himself and then additional confirmation from MetLife. (ECF No. 31, at 9.) But "Pitts absolutely disputes the [disclaimer] procedure alleged

3

by MetLife, which . . . contradicts . . . the simple procedure set forth on OPM's webpage." (ECF No. 35, at 14.)

The parties' second disagreement concerns the extent to which two provisions in the FEGLI Contract influence MetLife's disclaimer determinations. (ECF No. 20 ¶¶ 68, 71–73; ECF No. 31, at 7–11.) Namely, Section 2.6(a) says that MetLife's "determination as to the entitlement to payment of Benefits is to be given full force and effect, unless it can be shown that the determination was arbitrary and capricious" (the "arbitrary-and-capricious standard"). (ECF No. 23-1, at 27.) And Section 2.6(e) says that MetLife "may request any additional information needed to comply with this Section and shall not pay Benefits until it is reasonably satisfied that payment of Benefits would not be in violation of this Section" (the "reasonably-satisfied standard"). (*Id.*) But the standards do not specify the procedure for disclaiming benefits or how MetLife makes its determinations regarding those disclaimers.

Although Pitts recognizes that the FEGLI Contract's terms generally affect MetLife's administration of insurance claims, she claims neither standard applies to the disclaimer process specifically and that, even if they do, she has sufficiently pleaded a breach of contract claim. (*See* ECF No. 20 ¶¶ 3–4; ECF No. 35, at 8, 12–16.)[3]

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) governs motions for judgment on the pleadings, which are "assessed under the same standards as . . . motion[s] to dismiss under Rule 12(b)(6)." *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013). "To survive a motion to dismiss,

---

[3] MetLife attached the full FEGLI Contract as an exhibit to its answer. (ECF No. 23-1.) Because Pitts seems to accept the authenticity of the exhibit, the Court considers it "integral to the complaint and authentic" for the purposes of deciding the instant motion. *See Occupy Columbia*, 738 F.3d at 116.

a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face,'" which "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In resolving a 12(c) motion, a court "does not resolve the merits of the plaintiff's claim or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014).

As with a Rule 12(b)(6) motion, a court resolving a Rule 12(c) motion "accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). A court, however, "need not accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions or arguments." *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008) (quoting *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000)).

### III. DISCUSSION

Under Virginia law, a viable breach of contract claim has three elements: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004). The parties' arguments center primarily on the second element—whether MetLife breached the FEGLI Contract in rejecting Allah's ostensible disclaimer. Specifically, they disagree over whether the OPM website sets forth the only procedure governing the disclaiming of benefits.

The parties' dispute over the proper disclaimer procedure presents a dispute of fact not suitable for resolution at this stage of the litigation. *See Drager v. PLIVA USA, Inc.*, 741 F.3d 470,

Case 3:23-cv-00141-JAG   Document 46   Filed 03/05/24   Page 6 of 7 PageID# 429

474 (4th Cir. 2014) (holding that a court "does not resolve the merits of the plaintiff's claim or any disputes of fact" under Rule 12(c)).  Pitts asserts that the OPM website provides a "straightforward" disclaimer procedure: a beneficiary must "advise[] OFEGLI, in writing, that [he] does not want the money [he] is entitled to receive." (*See* ECF No. 20 ¶¶ 55–56; ECF No. 20-5.) MetLife, on the other hand, asserts that under its "established procedure," the disclaiming beneficiary must send the disclaimer himself and then OFEGLI must contact the person to confirm the disclaimer. (ECF No. 31, at 9.) But MetLife gives no legal basis for the existence of its purported process other than claiming it "is rooted in and consistent with" the reasonably-satisfied standard of the FEGLI Contract. (*Id.* at 8.) The FEGLI Contract, however, does not explicitly set out a disclaimer process.  Thus, at this stage, the Court must accept Pitts's allegation that the OPM website governs the disclaimer process and that no other process exists.

The parties also dispute the extent to which the arbitrary-and-capricious standard and the reasonably-satisfied standard influence MetLife's processing of a disclaimer.  But under either standard, Pitts has pleaded sufficient facts to establish a viable breach of contract claim.  The complaint plausibly alleges that MetLife acted in an "arbitrary and capricious" manner by disregarding the OPM website's procedure.  According to the OPM website, Allah needed only to "advis[e] OFEGLI, in writing, that [he did] not want the money [he was] entitled to receive." (ECF No. 20 ¶ 55.)  Pitts obtained a signed and notarized letter in which Allah agreed to disclaim his rights to the benefits.  Accordingly, after MetLife received the valid disclaimer, it should have "pa[id] the disclaimed share equally to the remaining beneficiaries." (*See id.* ¶ 57.) Instead, Pitts

alleges that MetLife went beyond what the OPM procedure required and thus acted arbitrarily and capriciously.[4]

Likewise, assuming the reasonably-satisfied standard applies to disclaimers, Pitts has sufficiently pleaded that her actions should have reasonably satisfied MetLife. Pitts obtained a disclaimer from Allah as the OPM website required. No other written instrument set out an explicit procedure. Accordingly, the signed and notarized disclaimer, which seemingly complied with the OPM procedure, should have "reasonably satisfied [MetLife] that payment of the Benefits would not be in violation of" the FEGLI Contract. (ECF No. 23-1, at 27.) Under the facts alleged, she could show MetLife breached its obligation under the FEGLI Contract. The Court, therefore, will deny MetLife's motion for judgment on the pleadings.

## IV. CONCLUSION

Pitts's claim for breach of contract relies on a factual determination of MetLife's underlying procedure for disclaiming beneficiaries. Accepting as fact the procedure Pitts pleaded, she has plausibly alleged a breach of contract claim, so the Court will deny the motion for judgment on the pleadings. (ECF No. 30.)

The Court will issue an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and the *pro se* defendant.

Date: 5 March 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge

---

[4] Similarly, at least one other court has denied a motion for summary judgment where MetLife required an additional disclaimer beyond what the OPM website required. *See Rolon v. Metro. Life Ins.*, No. 5:12-cv-01856, 2022 WL 35609, at *5 (E.D. Pa. Jan. 4, 2022) (holding that a reasonable jury could find that MetLife's refusal to construe a beneficiary's letter as a disclaimer and MetLife's insistence that he submit another writing made its determination "arbitrary and capricious").