IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NAKIYA PITTS,
                Plaintiff,

v.

METROPOLITAN LIFE INSURANCE
COMPANY, et al.,
                Defendants.

Civil Action No. 3:23cv141

METROPOLITAN LIFE INSURANCE
COMPANY,
    Counterclaim and Crossclaim in
    Interpleader Plaintiff

v.

NAKIYA PITTS,
    Counterclaim in Interpleader
    Defendant,

and

SUPREME TRUTH REVEAL ALLAH
    Crossclaim in Interpleader Defendant.

## OPINION

When Karen Caldwell-Smith ("Caldwell-Smith"), a federal employee, passed away in November 2022, she was enrolled in the Federal Group Life Insurance ("FEGLI") program. The paperwork on file with the defendant and interpleader plaintiff, Metropolitan Life Insurance Company ("MetLife"), designated three beneficiaries to Caldwell-Smith's benefits: her daughter, Nakiya Pitts ("Pitts"), the plaintiff in this action and defendant in MetLife's counterclaim and crossclaim; her mother, who had predeceased her; and her ex-husband, the defendant and

interpleader defendant now known as Supreme Truth Reveal Allah ("Allah"). MetLife paid Pitts part of the benefits due at the time of Caldwell-Smith's death based on the designation paperwork on file. Pitts then sued MetLife to pay her the remainder of the benefits because she asserts that Allah has disclaimed his portion of the benefits through a notarized document executed after Caldwell-Smith's death and provided to MetLife.

MetLife originally disputed whether Allah's disclaimer satisfied its requirements for disclaiming funds. And Allah, proceeding *pro se*, has asserted that he did not intend to disclaim the funds. Yet, despite laying claim to the funds initially, Allah has failed to participate in this litigation or respond to Court Orders for months. MetLife filed a counterclaim and crossclaim in interpleader, and Pitts has filed a crossclaim against Allah. Allah has not responded to either. MetLife has also filed a motion for relief from obligation to deposit funds, or, in the alternative, for leave to conditionally deposit funds (the "motion for deposit"). (ECF No. 66.) And Pitts has filed a motion for default judgment against Allah based on his failure to defend in this case. (ECF No. 62.)

Allah has not meaningfully participated in this case since October 2023, and has not responded to any Court communication since April 2024. The Court must now resolve the motion for default judgment, the motion for deposit, and the requests made in MetLife's counterclaim and crossclaim in interpleader. For the following reasons, the Court will grant in part the motion for deposit and the motion for default judgment, deny MetLife's request for injunctive relief, allow MetLife to seek attorneys' fees and costs in a future motion, and cancel the trial in this case.

# I. BACKGROUND

### A. Facts Alleged in the Complaint and Pitts's Crossclaim

The FEGLI program—created through the Federal Life Insurance Act of 1954 ("FEGLIA")—provides life insurance coverage to certain federal government employees. (ECF No. 20 ¶¶ 1, 3.) Caldwell-Pitts received such a policy because she worked for the Department of Defense. (*See id.* ¶¶ 12–13.) During her lifetime, she designated three policy beneficiaries for the total value of her insurance benefits: (1) her daughter, Pitts (50%); (2) her former husband and Pitts's biological father, Allah (25%); and her mother, Shirley Ann Caldwell (25%). (*Id.* ¶ 17; *see also* ECF No. 20-1.) Caldwell-Pitts's mother died before Caldwell-Pitts. (ECF No. 20 ¶ 19.) As a result, her interest split evenly between the two remaining beneficiaries. (*See id.*; ECF No. 20-6, at 4.) Thus, when Caldwell-Pitts died on November 27, 2022, two beneficiaries of the policy—worth $804,000—remained: Pitts (62.5%) and Allah (37.5%). (*See* ECF No. 20 ¶¶ 14, 16–17.) An exclusive contract (the "FEGLI Contract") between MetLife and the Office of Personnel Management ("OPM") required MetLife to administer these benefits consistent with the requirements and conditions of FEGLIA, OPM's regulations, and the FEGLI Contract. (*Id.* ¶¶ 3–4.)[1]

Having divorced Caldwell-Pitts twenty-four years earlier and left the family, Allah had an estranged relationship with Pitts. (*See id.* ¶¶ 20–21.) After Caldwell-Pitts died, Pitts located Allah and told him that she would handle the life insurance. (*Id.* ¶ 22.) Pitts, accompanied by Caldwell-Pitts's brother and a notary public, met Allah at his home on January 7, 2023. (*Id.* ¶ 24.) During this meeting, Allah agreed to disclaim his rights to the benefits and signed a letter titled, "Agreement To Relinquish all Claims to MetLife/FEGLI Insurance Benefits of Karen E. Pitts, and

---

[1] OPM implements the FEGLI program pursuant to 5 U.S.C. § 8709. (*Id.* ¶ 3.)

3

Assign All Benefits to the sole surviving daughter, to wit: Nakiya S. Pitts." (*Id.* ¶¶ 25–26; ECF No. 20-2.) The disclaimer "expressly references the FEGLI/MetLife Claim # 20221202044, . . . provided . . . Allah with the FEGLI/MetLife address," and "is written to the 'ATTN/ of FEGLI/MetLife making it clear to . . . Allah that the document would be submitted to FEGLI/MetLife." (ECF No. 54, at 9.) It also indicated that Allah "submitt[ed] [the] letter of [his] own free will, and being of sound mind." (*Id.*) Allah signed the disclaimer as the "claim relinquisher." (*Id.*)

Two days later, Pitts sent the signed and notarized disclaimer letter to MetLife's Office of Federal Employees' Group Life Insurance ("OFEGLI") by email and postal service. (ECF No. 20 ¶ 37.) Thereafter, MetLife confirmed with Pitts that it had received the disclaimer letter, found that the disclaimer letter was a "valid disclaimer," and determined that Allah had "validly disclaimed his beneficiary rights under the Policy." (*Id.* ¶ 38.) On January 11, 2023, MetLife sent a letter to Allah confirming that it had received "[his] letter . . . disclaiming any entitlement to [his] . . . benefits." (*Id.* ¶¶ 39–40.) In that same letter, MetLife asked Allah to submit an "enclosed disclaimer form," but he never responded. (*Id.* ¶¶ 43–44.) Yet on January 23, 2023, MetLife confirmed with Pitts by phone that it had Allah's disclaimer. (ECF No. 54 ¶ 40.)

Despite the signed and notarized disclaimer that Pitts sent to MetLife, MetLife refused to pay Allah's interest in the benefits to Pitts. (*Id.* ¶ 67.) Pitts seeks a court order directing MetLife to pay the benefits disclaimed by Allah—a total of $301,500, plus interest under FEGLIA. (*Id.* at 9.)

Pitts and MetLife initially disagreed about what procedure governs the disclaimer of benefits. In her Amended Complaint, Pitts points to the OPM website, which includes a disclaimer procedure that says a beneficiary can disclaim their interest by "advis[ing] OFEGLI, in writing,

4

that he/she does not want the money he/she is entitled to receive." (*See id.* ¶¶ 51–56; ECF No. 20-5.) According to the OPM website, upon satisfying this procedure, "OFEGLI would pay the disclaimed share equally to the remaining beneficiaries." (ECF No. 20 ¶ 57; ECF No. 20-5.)

When MetLife initially responded to Pitts's Amended Complaint, it asserted that it has a different "established" disclaimer procedure than that listed on the OPM website, which requires the disclaiming beneficiary to submit a disclaimer himself and then additional confirmation from MetLife. (ECF No. 31, at 9.) Thus, this dispute largely centers on whether the notarized disclaimer—regardless of whether Allah intended to disclaim the funds—overrode Caldwell-Smith's 1993 beneficiary designation based on the different processes asserted by the parties.

### B. *Allah's Dwindling Participation in the Litigation*

Although Pitts's original Complaint only named MetLife as a defendant, Pitts's Amended Complaint filed on June 21, 2023, named Allah "as a defendant to this proceeding to answer as to any interest he may claim to have in the life insurance benefits payable under the FEGLI program due to the death of" Caldwell-Smith. (ECF No. 20 ¶ 8.) Pitts served Allah with a summons and a copy of the Amended Complaint on June 24, 2023. (*See* ECF No. 24.) On July 24, 2023, Pitts requested entry of default against Allah because Allah had failed to respond to the Amended Complaint in the time required, (*see* ECF No. 25), and the Clerk entered default on August 7, 2023, (*see* ECF No. 27). On August 21, 2023, Allah filed a notice indicating his intent to participate in this case, (*see* ECF No. 32), and on September 1, 2023, Allah filed a motion to vacate entry of default, (*see* ECF No. 36). On September 19, 2023, the Court vacated the Clerk's entry

of default and directed Allah to respond to the Amended Complaint within fourteen days. (*See* ECF No. 41.)

On October 3, 2023, Allah notified the Clerk that he had received the Court's Order on September 30, 2023, and had mailed his answer on October 3, 2023. The Court received Allah's Answer on October 6, 2023. (*See* ECF No. 44.) On October 10, 2023, Pitts filed a request for entry on default against Allah, (*see* ECF No. 43), which Allah opposed on October 17, 2023, (*see* ECF No 45). Thus, between August and October 2023, Allah participated in this case, and the Court withheld ruling on the October 2023 request for entry of default.

On April 19, 2024, the Court held a conference call with the parties to set the trial date and pretrial deadlines. Though the Court set the call around Allah's work schedule, Allah did not attend. On April 23, 2024, the Court entered a pretrial order setting a trial date and various pretrial deadlines, (*see* ECF No. 48), and separately directed Allah to acknowledge the deadlines and trial date given his absence from the conference call, (ECF No. 50). When Allah failed to do so by the deadline set by the Court, the Court sua sponte extended his deadline to respond by two weeks and directed the Clerk to both mail the order and send it to Allah by email. (ECF No. 52.)

### C. *MetLife's Interpleader Counterclaim and Crossclaim and the Ensuing Events*

On May 23, 2024, MetLife filed an Amended Answer to Pitts's Amended Complaint and a counterclaim and crossclaim in interpleader. (*See* ECF No. 53.) The counterclaim and crossclaim recite many of the same facts laid out in Pitts's Amended Complaint and MetLife's response thereto. Essentially, the counterclaim and crossclaim in interpleader acknowledges that both Pitts and Allah have laid claim to the disputed funds, but now contends that "MetLife is unable to determine the claimant(s) legally entitled to the disputed FEGLI benefits without risking exposure to double liability." (*Id.* at 26.) MetLife purports that it "has no interest in the disputed FEGLI

6

Benefits (except to recover its attorney's fees and costs of this action) . . . [and] therefore respectfully requests that this Court determine to whom the disputed FEGLI benefits should be paid." (*Id.*)

On May 30, 2024, Pitts answered MetLife's crossclaim and counterclaim in interpleader. (ECF No. 54.) She also filed a crossclaim against Allah that sought a declaratory judgment, (1) declaring that Allah had validly disclaimed his rights to the FEGLI benefits, (2) declaring Pitts as the sole remaining beneficiary to the FEGLI benefits, and (3) directing payment of the those benefits and accrued interest to Pitts.

Allah did not respond to MetLife's and Pitts's counterclaim and crossclaims. On June 6, 2024, the Court denied the October 2023 request for entry of default, (ECF No. 55), directed MetLife to file a motion to deposit the disputed funds into the Court Registry, (ECF No. 56), and directed Allah to respond to the crossclaims against him by June 17, 2024, (ECF No. 57). In its Order directing Allah to respond, the Court recounted Allah's failure to participate in the litigation for the past several months, and it warned Allah that his continued failure to respond could result in default judgment against him. Allah did not respond as required. Pitts filed a request for entry of default on June 21, 2024, (*see* ECF No. 58), which the Clerk entered on June 25, 2024, (*see* ECF No. 61). Pitts moved for default judgment against Allah on June 26, 2024. (*See* ECF No. 62.)

On July 2, 2024, MetLife filed the instant motion to deposit funds. (*See* ECF No. 66.) In the motion, MetLife explained that, due to an administrative error, it had already paid Allah the disputed funds.[2] Thus, it asks the Court to either relieve it of its obligations to deposit the funds

---

[2] Allah spoke with MetLife's attorneys about this error but has not contacted the Court to formally lay claim to the funds disbursed to him in error despite having full knowledge of the ongoing litigation and the dispute surrounding those funds.

7

and instead direct payment to the appropriate beneficiary, or to conditionally deposit the funds into the Court Registry on the condition that the Court return the funds to MetLife should the Court determine that Allah remains the beneficiary of those funds.

## II. DISCUSSION

Two motions currently pend before the Court: (1) MetLife's motion for deposit arising from its interpleader counterclaim and crossclaim,[3] (ECF No. 66), and (2) Pitts's motion for default judgment against Allah, (ECF No. 62). The Court will address each motion in turn.

### A. *Interpleader Action and Motion for Deposit*

#### *1. Jurisdiction*

A party may institute an interpleader action under either 28 U.S.C. § 1335 ("statutory interpleader") or Federal Rule of Civil Procedure 22 ("rule interpleader"). Although both rule and statutory interpleader permit a plaintiff to join multiple claimants to a property, they have distinct "jurisdictional requirements." *Allstate Life Ins. Co. v. Ellett*, 2:14cv372, 2015 WL 500171, at *2 (E.D. Va. 2015). Statutory interpleader "requires (1) *minimal* diversity between '[t]wo or more adverse claimants,' (2) a value of $500 or more in controversy, and (3) a deposit in court by the plaintiff of the amount in dispute or a bond." *AmGuard Ins. Co. v. SG Patel & Sons II LLC*, 999 F.3d 238, 245 (4th Cir. 2021) (quoting 28 U.S.C. § 1335(a)). Rule interpleader "affords a party who fears being exposed to the vexation of defending multiple claims to a limited fund or property that is under his control a procedure to settle the controversy and satisfy his obligation in a single proceeding." *See* 7 Wright, Miller, & Kane, *Federal Practice & Procedure* § 1704, at 540–41 (3d ed. 2001); *see also Equitable Life Ins. Soc. v. Jones*, 679 F.2d 356, 358 n.2 (4th Cir. 1982). It

---

[3] MetLife also makes several requests in its counterclaim and crossclaim in interpleader that the Court will address as part of its motion for deposit.

8

requires either federal question jurisdiction under 28 U.S.C. § 1331 or diversity jurisdiction under 28 U.S.C. § 1332. *AmGuard Ins. Co*, 999 F.3d at 245.

Here, the Court has jurisdiction under both statutory interpleader and rule interpleader.[4] Allah is a citizen of North Carolina, Pitts is a citizen of Virginia, and MetLife is a citizen of New York, meaning they have diverse citizenship. Allah and Pitts have made competing claims to the disputed funds, and therefore, are adverse claimants. MetLife does not dispute that one of these two parties is entitled to the funds. Instead, this case rests not simply on whether Allah disclaimed the funds, but primarily on whether that disclaimer satisfies the FEGLI Program's disclaimer requirements. The disputed funds—more than $300,000—exceed the monetary threshold for both statutory interpleader and diversity jurisdiction. And the Court will require MetLife to deposit the funds into the Court Registry. The Court, therefore, has jurisdiction over the interpleader counterclaim and crossclaim.

### 2. *Pending Motion to Deposit Funds*

Although MetLife initially disputed Pitts's entitlement to Allah's portion of the funds, by filing the interpleader counterclaim and crossclaim, MetLife now appears to acknowledge that a dispute exists between Pitts and Allah but seeks to remove itself from the action. Indeed, once it filed the interpleader counterclaim and crossclaim, it initially seemed poised to ask the Court for leave to deposit the funds into the Court Registry. But MetLife now faces an unusual scenario: due to its own internal administrative error, it paid the funds to Allah before the conclusion of this litigation.

MetLife does not contend that paying Allah relieves it of its potential liability to Pitts. Instead, it asks

---

[4] MetLife asserts that the Court has jurisdiction under both statutory interpleader and rule interpleader in its counterclaim and crossclaim. (*See* ECF No. 53, at 22–23.)

that it be relieved from an obligation to deposit funds into the Registry of the Court, and that the Court instead issue an Order that:

> (1) in the event the Court finds for Interpleader Defendant Pitts and against Interpleader Defendant Allah, MetLife be directed to pay to Ms. Pitts the amount of the Disputed Benefit . . . , and that upon such payment, the Court grant MetLife a discharge from further liability and dismissal with prejudice from this case, and prohibit Ms. Pitts and Mr. Allah from initiating or pursuing any action or proceeding against MetLife regarding the Disputed Benefit, or,
>
> (2) in the event that the Court finds for Interpleader Defendant Allah and against Interpleader Defendant Pitts, the Court grant MetLife a discharge from further liability and dismissal with prejudice from this case, and prohibit Ms. Pitts and Mr. Allah from initiating or pursuing any action or proceeding against MetLife regarding the Disputed Benefit.

(ECF No. 67, at 8.) Alternatively, if the Court requires MetLife to deposit funds into the Court Registry, it asks that Court to order that:

> (1) upon deposit of the Disputed Benefit, MetLife is discharged from further liability and dismissed with prejudice from this case, and Ms. Pitts and Mr. Allah are prohibited from initiating or pursuing any action or proceeding against MetLife regarding the Disputed Benefit, and
>
> (2) if the Court finds for Interpleader Defendant Allah and against Interpleader Defendant Pitts, the deposited funds shall be returned to MetLife.

(*Id.*)

Pitts opposes MetLife's request to hold the funds without depositing it into the Court Registry. Instead, she contends that

> MetLife should be directed to pay the disputed funds into the registry of the Court, together with interest, and be dismissed from the litigation. If it is ultimately determined that Ms. Pitts is not the rightful beneficiary of the funds, the funds may at that time be returned to MetLife, as a non-party to the litigation.

(ECF No. 68, at 2.)

Although the Court has jurisdiction under both rule interpleader and statutory interpleader, MetLife appears to rely primarily on rule interpleader in its motion to deposit to support its request

10

to withhold depositing funds into the Court Registry. But the basis for interpleader asserted in the counterclaim and crossclaim, and the complicated procedural history of this case, compels the Court to require MetLife to deposit the disputed funds into the Court's Registry. In the interpleader action itself, MetLife asserts that the Court has jurisdiction over this case as both a statutory interpleader action and a rule interpleader action. (*See* ECF No. 53, at 22–23.) Though a rule interpleader action does not necessarily require a deposit into the Court Registry, *see AmGuard Ins. Co.*, 999 F.3d at 248, a statutory interpleader action requires such a deposit, *see* § 1335(a)(2). Moreover, Pitts's objection to allowing MetLife to interplead without a deposit is well taken. This case has presented procedural difficulties at every turn, and MetLife's error in paying Allah has further complicated matters. Further, the Court will grant in part Pitts's motion for default judgment and will hold Allah in default on the interpleader crossclaim, meaning MetLife will need to make another payment of the disputed funds anyway because Allah's default means he has forfeited his claim to the funds.

For all these reasons, the Court will grant in part the motion for deposit to the extent MetLife asks the Court to allow it to deposit funds into the Court Registry.

### 3. *Dismissal*

MetLife asks the Court to "[d]ismiss[] MetLife with prejudice from this action, and discharge[] MetLife, from any further liability upon payment of the disputed FEGLI benefits into the Registry of the Court." (ECF No. 11, at 8.) In an interpleader action, "the stakeholder has no interest in the money or property at issue but simply deposits the money or property with the court for distribution to the claimants." *AmGuard Ins. Co.*, 999 F.3d at 244. In other words, "the stakeholder makes no claim to a part of the money or property for itself and is 'indifferent' as to which claimant should receive the money or property." *Id.* (quoting *Killian v. Ebbinghaus*, 110

11

U.S. 568, 571 (1884)). And "[o]nce the property is deposited in the court, the court directs the claimants to interplead among themselves for their portion, and the stakeholder is discharged." *Id.* MetLife brought this "[a]s a mere stakeholder [who] has no interest in the disputed FEGLI Benefits (except to recover its attorney's fees and costs of this action)." (ECF No. 53, at 25.) Because MetLife properly invoked the Court's jurisdiction, the Court will discharge it from further liability. The Court will direct the Clerk to dismiss MetLife from this action after MetLife has deposited the disputed FEGLI benefits with the Court.

### 4. *Attorneys' Fees*

MetLife asks the Court to award it attorneys' fees and costs. "A federal district court has discretion to award attorney's fees to a stakeholder in an interpleader action when it is fair and equitable." *Jefferson Pilot Fin. Ins. Co. v. Buckley*, 3:04cv783, 2005 WL 221076, at *2 (E.D. Va. Jan. 13, 2005). MetLife has not submitted any documentation to support an award of fees and costs. If it wishes to seek an award of fees and costs, it must file an appropriate motion within fourteen (14) days of this Opinion and Order along with an affidavit or declaration itemizing time spent on the case, describing the work done, and the hourly rate of the person billing the case; and an affidavit or declaration from an expert to establish the reasonableness of the fees.

### 5. *Injunctive Relief*

Finally, MetLife seeks an order permanently enjoining the interpleader defendants "from instituting any action or proceeding in any state or United States court against MetLife for the recovery of the disputed FEGLI benefits ($301,500, plus interest under FEGLIA) as a consequence of the death of the Decedent except by way of interpleader in this action." (ECF No. 53, at 26–27.)

Although some district courts have used the All Writs Act, 28 U.S.C. § 1651, to enjoin defendants in rule interpleader suits from bringing other federal suits regarding the claims at issue, others have declined to issue an injunction in this context. And the Anti-Injunction Act, 28 U.S.C. § 2283, limits federal courts' ability to enjoin state court proceedings but provides that a district court may issue injunctions that are "necessary in aid of [the court's] jurisdiction, or to protect or effectuate its judgment."

In seeking a permanent injunction, MetLife must show "(1) that [it] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156–57 (2010). Aside from the current lawsuit—which the Court will largely resolve in this Opinion and Order—MetLife does not allege that either Pitts or Allah has instituted or threatens to institute a separate action against it. Although MetLife faces the risk that Allah could oppose any future efforts by MetLife to claw back the funds it inadvertently paid him, MetLife can "rely on" this Court's Opinion that explains it will discharge MetLife from the suit following its deposit of the funds; that Allah has defaulted, thereby admitting that he signed the notarized form knowing he was disclaiming the funds and also forfeiting his claim to the funds; and that the Court will direct payment of the funds to Pitts based on the interpleader counterclaim and crossclaim. *See New York Life Grp. Ins. Co. of NY v. Maxwell*, 645 F. Supp. 3d 26, 36 (N.D.N.Y. 2022). Further, "[e]ven if a judgment were entered against [MetLife] despite the Court's order, money damages could ultimately compensate" MetLife's injury. *See id.* MetLife has therefore failed to show

irreparable harm, and the Court will not grant MetLife's request to permanently enjoin the defendants from instituting other proceedings against it.

### B. *Motion for Default Judgment*

#### 1. *Legal Standard*

If a defendant fails to defend against a case, the plaintiff may seek an entry of default. *See* Fed. R. Civ. P. 55(a). After the Clerk of Court enters default pursuant to Rule 55(a), the Court may enter default judgment against the defendant. *See* Fed. R. Civ. P. 55(b)(2). A defendant in default "admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (internal quotations omitted). Normally, in reviewing a motion for default judgment, the Court accepts the plaintiff's well-pleaded allegations as true and determines whether those allegations support the relief sought. *See id.* But in an interpleader action, a court need not evaluate a complaint's allegations; "rather, a defendant's lack of action can be taken as forfeiting a claim to the property in dispute." *Life Ins. Co. of N. Am. v. Quaye*, No. 3:23cv130, 2023 WL 4672384, at *2 (E.D. Va. July 20, 2023) (internal quotation omitted).

#### 2. *Analysis*

In this case, Allah has defaulted. Although he initially responded to Pitts's Amended Complaint, he has barely participated in the litigation since October 2023, and has not participated at all since at least April 2024. Indeed, he has failed to respond to multiple Court Orders, and he has not responded to either MetLife's counterclaim and crossclaim in interpleader or to Pitts's crossclaim. Moreover, the Court has warned Allah that his failure to respond could result in default judgment against him, and the Court has given him numerous opportunities to participate

14

in this case, including vacating an earlier entry of default when Allah indicated an intent to engage in this litigation. Further, Allah has failed to respond to the motion for default judgment. Based on the foregoing, and because "a defendant's lack of action can be taken as forfeiting a claim to the property in dispute," the Court will grant Pitt's motion for default judgment against Allah as to MetLife's counterclaim and crossclaim in interpleader and will direct payment of the disputed funds to Pitts. *See Life Ins. Co. of N. Am.*, 2023 WL 4672384, at *2.

Pitts also asks the Court to enter default judgment against Allah with respect to her crossclaim against him, which is not an interpleader action. The Court will grant in part the motion as to Pitts's crossclaim. Her crossclaim details Allah's disclaimer of the funds and then asks the Court to declare that this disclaimer relinquished Allah's right to the disputed funds under the FEGLI program. Allah, for his part, admitted to signing the notarized document but argued that he did not intend to disclaim his rights and had not read through what he signed. (*See* ECF No. 44, at 3–4.) "The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact, is concluded on those facts by the judgment, and is barred from contesting on appeal the facts thus established." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). By failing to defend in this case, Allah admits Pitts's allegations against him regarding the facts surrounding his signature of the disclaimer, and he can no longer assert that he did not know what he was signing or that he did not intend to disclaim the benefits by the signing the notarized form.

But the Court will not grant the motion for default judgment to the extent Pitts asks the Court to declare that this waiver satisfactorily met OPM's or MetLife's requirements to disclaim the benefits under the FEGLI Program. When a court enters default judgment, "[t]he defendant is not held . . . to admit conclusions of law." *Id.* (alteration in original) (quoting *Nishimatsu Constr.*

15

*Co., Ltd.*, 515 F.2d at 1206). Whether the disclaimer met either OPM's or MetLife's requirements, and whether OPM's requirements only control the disclaimer procedure, calls for a legal conclusion not automatically admitted upon entry of default judgment. And, whether Allah's disclaimer satisfied the requirements to disclaim funds under the FEGLI program goes beyond the dispute between Pitts and Allah and arises instead as an issue between Pitts and MetLife, the other defendant not in default and actively litigating this case. Ultimately, however, the Court need not determine whether the disclaimer was valid or whether it satisfied any or all of the procedures laid out by the parties. Because the Court holds that Allah has defaulted in the interpleader action, "the complaint's allegations do not need evaluation when determining whether to grant a motion for default judgment." *Life Ins. Co. of N. Am.*, 2023 WL 4672384, at *2. Allah's lack of participation in the interpleader action has "forfeit[ed] [his] claim to the property in dispute." *Id.* The partial grant of default judgment on Pitts's crossclaim against Allah, therefore, does not prevent the Court from directing MetLife to pay Pitts the disputed funds.

## IV. <u>CONCLUSION</u>

For the foregoing reasons, the Court will grant in part MetLife's motion for deposit, (ECF No. 66), and will require MetLife to deposit the disputed funds into the Court Registry. Upon MetLife's deposit of the funds, the Court will dismiss MetLife from this action. The Court will not grant the injunctive relief MetLife requests against Allah and Pitts. MetLife may also move for attorneys' fees and costs within fourteen (14) days of this Opinion and Order.

Further, the Court will grant in part Pitts's motion for default judgment against Allah. (ECF No. 62.) Upon deposit of the funds into the Court Registry, the Court will direct the Clerk to pay the funds to Pitts and will terminate this case.

The Court will enter an appropriate Order.

Let the Clerk send a copy of this Opinion to all counsel of record and to Allah at his mailing address and at supremeallah3@outlook.com

Date: 28 August 2024
Richmond, VA

/s/
John A. Gibney, Jr.
Senior United States District Judge